IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RACHEL BOHNENKAMP          )
    Plaintiff          )          Case No. 1:19-cv-00115-RAL
              )
vs.          )
              )          RICHARD A. LANZILLO
JAMES WHISTERBARTH,          )          UNITED STATES MAGISTRATE JUDGE
et al.,          )
    Defendants          )          MEMORANDUM OPINION AND
              )          ORDER ON DEFENDANTS' MOTION
              )          TO DISMISS FOR LACK OF
              )          JURISDICTION
              )
              )          ECF No. 39

I.     Introduction

Plaintiff Rachel Bohnenkamp is the spouse of an inmate housed at the Federal Correctional

Institution at McKean, Pennsylvania (FCI-McKean).  She brings this action against the United States

of America (the Government) under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b); 28

U.S.C. §2671, *et seq.* (Count I), and against Defendant James Wusterbarth, a former Bureau of

Prisons Correctional Officer, under the state common-law theories of intentional infliction of

emotional distress and invasion of privacy (Counts II and III).  The Government has moved

pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss Mrs. Bohnenkamp's FTCA claim, arguing that the

Court lacks subject matter jurisdiction over that claim because (1) Wusterbarth's alleged misconduct

upon which the claim arises occurred outside the scope of his employment with the Federal Bureau

of Prisons (BOP); (2) both the FTCA's intentional tort exception and the FTCA's discretionary

function exception bar her FTCA claim; and (3) Mrs. Bohnenkamp failed to exhaust her

administrative remedies concerning her negligent hiring/supervision theory of liability against the Government before she filed this action.[1]

For the following reasons, the Government's motion will be GRANTED in part and DENIED in part.

II.     Factual Background

Defendant James Wusterbarth was hired as a Correctional Officer at FCI McKean on November 29, 2015.  ECF No. 40-2, ¶ 4.  On August 18, 2018, Wusterbarth was on duty in the visitors' room at FCI-McKean when Mrs. Bohnenkamp and her two minor sons arrived to visit Mr. Bohnenkamp.  ECF No. 30, ¶¶ 15-16.  Mrs. Bohnenkamp had arranged for her, Mr. Bohnenkamp, and their sons to visit the "family playroom" of the visiting area.  *Id.*, ¶ 18.  When Mrs. Bohnenkamp arrived, Wusterbarth motioned for her to come over to the desk where he was stationed to oversee visiting room activity.  *Id.*, ¶¶ 19-20.  When she complied, Wusterbarth remarked to Mrs. Bohnenkamp that "he had not spoken to her much in the facility."  *Id.*, ¶ 21.  This comment struck Mrs. Bohnenkamp as odd because she had never met Wusterbarth before that day.  *Id.*, ¶ 20.

Wusterbarth then instructed Mrs. Bohnenkamp to provide the last two digits of her telephone number, explaining that he needed to speak with her.  *Id.*, ¶ 22.  When Mrs. Bohnenkamp asked why, Wusterbarth replied that he could not speak freely in the facility but "hinted that there was an issue with Mrs. Bohnenkamp's husband Chris, which Defendant Wusterbarth needed to discuss with her in private."  *Id.*, ¶¶ 22-23.  This exchange left Mrs. Bohnenkamp "extremely troubled."  *Id.*, ¶ 24.  Wusterbarth then "warned her that she could not speak to anyone, including

---

[1]  The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.  ECF Nos. 7, 53.  Although the Complaint identified the individual defendant's last name as "Whisterbarth," he and the Government provided the correct spelling, "Wusterbarth," which the Court uses throughout this Opinion.  ECF No. 20, p. 1, n. 2.  The Amended Complaint refers to Plaintiff as "Mrs. Bohnenkamp."  ECF No. 30.  The Court will do the same.

her husband, about the subject of their conversation," which "only heightened" her concern.  *Id.*, ¶ 24.  Wusterbarth again directed Mrs. Bohnenkamp to provide him with the last two digits of her telephone number so that he could contact her.  *Id.*, ¶ 25.  The stress and anxiety caused by Wusterbarth's orders and comments made her feel nauseous.  *Id.*, ¶ 26.  Mrs. Bohnenkamp ultimately provided the numbers to Wusterbarth, "believing that she had no other option and fearing that her husband was in some type of serious trouble."  *Id.*

Later that day, at approximately 4:03 p.m., after Mrs. Bohnenkamp and her sons had left FCI-McKean, she received a call on her cell phone from Wusterbarth.  *Id.*, ¶ 27.  Wusterbarth told her that he needed to meet her to discuss her husband.  *Id.*, ¶ 28.  Mrs. Bohnenkamp refused to meet Wusterbarth and demanded to know what was going on.  *Id.*, ¶ 29.  Wusterbarth then acknowledged that his call was not about her husband; he explained that he was attracted to her and wanted to see her.  *Id.*, ¶ 30.  Mrs. Bohnenkamp immediately responded that his advances were inappropriate and that she was committed to her husband and children.  *Id.*, ¶ 31.

Despite this rebuke, Wusterbarth insisted multiple times during the call that they meet, including at the hotel where she was staying with her two sons.  *Id.*, ¶ 32.  He instructed her "to leave her two children, ages seven and nine, alone in the hotel room and to meet him in the lobby." *Id.*, ¶ 33.  When Mrs. Bohnenkamp refused, he instructed her to drive to Buffalo to meet him because he knew she lived near Niagara Falls.  *Id.*, ¶ 34.  Now, frightened that Wusterbarth knew her address, Mrs. Bohnenkamp again refused.  At this, Wusterbarth then "threatened her that she could never tell anyone about his advances, and that if she did her husband would be in serious danger." *Id.*, ¶ 35.

The next day, when Mrs. Bohnenkamp returned to FCI-McKean with her sons to visit her husband, Wusterbarth was again on duty in the visitors' area.  *Id.*, ¶ 36.  When he saw Mrs.

Bohnenkamp, Wusterbarth motioned to her to keep silent—a threat which terrified Mrs. Bohnenkamp and left her in fear for her own safety and that of her husband and children. *Id.*, ¶ 37. As instructed, Mrs. Bohnenkamp did not disclose Wusterbarth's advances and threats for months. *Id.*, ¶ 38. Because Mrs. Bohnenkamp had given her personal information—including her address, email, and phone number—to the prison when she had registered to visit her husband, she feared what Wusterbarth could do with access to this information. *Id.*, ¶ 38.

On November 28, 2018, Wusterbarth called one of the Bohnenkamps' sons on his phone, identified himself as an officer at the Bureau of Prisons, and told him that his father "had recently been in an altercation at the prison, and had died." *Id.*, ¶ 40. When Mrs. Bohnenkamp's son related this information to her, she was terrified and contacted the prison. *Id.*, ¶ 41. A prison official advised that her husband was alive and had not been involved in any incident. *Id.*

On March 2, 2019, while Mrs. Bohnenkamp visited her husband at FCI-McKean, another corrections officer informed them that a new officer would be supervising the visitors' room for the next quarter. *Id.*, ¶ 42. When Mrs. Bohnenkamp asked whether Wusterbarth would be supervising visitation, the same corrections officer advised her that Wusterbarth was on voluntary leave pending an investigation of sexual harassment and misconduct against visitors. *Id.*, ¶¶ 43-44. That same day, Mrs. Bohnenkamp filed a report regarding Wusterbarth's misconduct with the Bradford, Pennsylvania Police Department. As part of her report, she told the police that Wusterbarth had contacted her using a cell phone with a Las Vegas area code. *Id.*, ¶ 47. Later that evening, at 9:17 p.m., Mrs. Bohnenkamp received a series of text messages from a number she did not know, which read as follows: "You opened your mouth, you aren't smart at all"; "2022 you seem comfortable at best"; "My Vegas number? Seriously"; "See ya soon." *Id.*, ¶¶ 48-49. Mrs. Bohnenkamp understood the reference to '2022' to be to Mr. Bohnenkamp's prison release date, while "My Vegas number?"

referred to the fact that Mrs. Bohnenkamp had provided Wusterbarth's Las Vegas area cell phone number to the Bradford Police. *Id.*, ¶ 51. Mrs. Bohnenkamp feared that these text messages meant that Wusterbarth would harm her or her family in retaliation for her police report. *Id.*, ¶¶ 52-53. To avoid Wusterbarth, Mrs. Bohnenkamp changed her phone number and moved her family multiple times. *Id.*, ¶ 53. When Mrs. Bohnenkamp reported Wusterbarth's conduct to officials at FCI McKean, she was informed that they "already knew about Defendant Wusterbarth's predatory conduct, and had known for some time." *Id.*, ¶¶ 57-58. Mrs. Bohnenkamp also alleges that prison officials, including Warden Trate, had known that Wusterbarth kept an office calendar on which he recorded when various women were scheduled to come to the visitors' area at FCI-McKean, that Wusterbarth used this calendar to ensure that he was present when the women he wanted to pursue came to the prison, and that Warden Trate was aware of Wusterbarth's calendar before his contact with Mrs. Bohnenkamp on August 18, 2018. *Id.*, ¶¶ 58-61.

Mrs. Bohnenkamp filed an administrative claim alleging Wusterbarth subjected her to the preceding mistreatment and that Warden Trate was aware of Wusterbarth's predatory conduct. *Id.*, ¶ 68. *See also* ECF No. 40-3. Her administrative claim was denied on June 15, 2020. ECF No. 30, ¶ 69.

III.    Standard of Review

A motion to dismiss pursuant to Rule 12(b)(1) challenges a court's subject-matter jurisdiction over the plaintiff's claims. Fed. R. Civ. P. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Judkins v. HT Window Fashions Corp.*, 514 F. Supp.2d 753, 759 (W.D. Pa. 2007) (quoting *Mortensen v. First Federal Savings & Loan Association*, 549 F.2d 884, 891 (3d Cir. 1977)). As the party invoking the jurisdiction of the court, the plaintiff bears the burden of showing that her claims are properly before the court. *Brown v. Tucci*, 960 F. Supp. 2d 544, 561–62

5

(W.D. Pa. 2013) (citing *Development Finance Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995)). A Rule 12(b)(1) challenge can be either to the face of the complaint or to the facts upon which the invocation of subject matter jurisdiction is based. *Petruska v. Gannon University*, 462 F.3d 294, 302, n. 3 (3d Cir.2006). In reviewing a Rule 12(b)(1) motion, a court must determine whether it is asserting a facial attack or a factual attack. *Id.* A facial attack challenges jurisdiction based on the sufficiency of the plaintiff's pleading. When considering a facial attack, a court must accept the allegations contained in the plaintiff's complaint as true. *Id.* In contrast, where the motion presents a factual attack on the court's jurisdiction, the court does not attach a presumption of truthfulness to the plaintiff's allegations and may decide whether it has jurisdiction over the plaintiff's claims despite the existence of disputed material facts. *Mortensen*, 549 F.2d at 891. On a factual attack, the plaintiff bears "the burden of proof that jurisdiction does in fact exist." *Id.*

The Government's brief in support of its Rule 12(b)(1) motion appended several exhibits, including a "Certificate Denying Scope of Employment" executed by then United States Attorney for the Western District of Pennsylvania, Scott W. Brady; a Declaration from Jennifer Sidon, a Human Resources Manager at FCI-McKean; the administrative claim Mrs. Bohnenkamp submitted to the BOP; and a BOP human resources management manual with associated forms and addenda. ECF No. 40-1, 40-2, 40-3. Accordingly, the Court will treat the Government's motion as a factual attack on its jurisdiction and consider these submissions in its determination of the motion.

IV.    Discussion

A.  Positions of the Parties

The Amended Complaint (ECF No. 30) is the operative pleading before the Court.[2]   It
asserts that the Government is liable to Mrs. Bohnenkamp under the FTCA based on two theories:
(1) direct liability for the intentional torts of Wusterbarth because he was acting within the scope of
his employment; and (2) direct liability for its own negligent hiring and supervision of Wusterbarth.
The Government raises four arguments in support of its jurisdictional challenge: (1)Wusterbarth's
alleged conduct fell outside the scope of his employment with the BOP; (2) the FTCA's "intentional
tort exception" negates jurisdiction; (3) the FTCA's "discretionary function exception" negates
jurisdiction, and (4) Mrs. Bohnenkamp failed to exhaust her administrative remedies regarding her
negligent hiring and supervision theory of liability.  ECF No. 40, p. 2.

B.  The FTCA's Limited Waiver of Sovereign Immunity and Its Jurisdictional Requirements

The United States is immune from suit except where Congress specifically consents to waive
that immunity.  *United States v. Sherwood*, 312 U.S. 584, 586, 61 S. Ct. 767, 85 L. Ed. 1058 (1941).
When sovereign immunity is waived, Congress is permitted to specify the terms and conditions
under which suits may be brought.  *Honda v. Clark*, 386 U.S. 484, 501, 87 S. Ct. 1188, 18 L. Ed. 2d
244 (1967).  Absent congressional consent, a court lacks jurisdiction to entertain a lawsuit against the
Government.  *United States v. Mitchell*, 445 U.S. 535, 537, 100 S. Ct. 1349, 63 L. Ed. 2d 607 (1980).

---

[2] The original Complaint in this action was filed *pro se*; it included Christopher Bohnenkamp, Mrs. Bohnenkamp's
husband, as a Plaintiff and Warden Trate of FCI-McKean as a Defendant.  ECF No. 2.  Warden Trate filed a motion to
dismiss the claim against him or, alternatively, a motion for summary judgment.  ECF No. 19.  After counsel entered
their appearances on behalf of the Plaintiffs (ECF No. 9), Plaintiffs consented to the dismissal of the claim against
Warden Trate (see ECF Nos. 22, 24) and filed the Amended Complaint, which named only Mrs. Bohnenkamp as
Plaintiff.  *See* ECF No. 30.

The FTCA is a limited waiver of sovereign immunity that imposes liability upon the Government for certain torts committed by its employees. *Sheridan v. United States*, 487 U.S. 392, 398, 108 S. Ct. 2449, 101 L.Ed.2d 352 (1988); 28 U.S.C. § 1346(b). The FTCA itself, not the general grant of federal question jurisdiction of 28 U.S.C. § 1331, is the source of a federal court's jurisdiction to hear tort claims against the Government. *CNA v. United States*, 535 F.3d 132, 140 (3d Cir. 2008), *as amended* (Sept. 29, 2008). A plaintiff's claim must satisfy the six threshold requirements listed in § 1346(b)(1) to confer jurisdiction. A claim must be made

> "[1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*FDIC v. Meyer*, 510 U.S. 471, 477, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994) (quoting 28 U.S.C. § 1346(b)(1)) (alterations in original). The sixth of the § 1346(b)(1) requirements specifies state tort law as "the source of substantive liability under the FTCA." *Id.* at 478, 114 S. Ct. 996. Because the acts and omissions upon which Mrs. Bohnenkamp bases her claims occurred in Pennsylvania, its substantive law defines the parameters of her claims. *See Duhring Res. Co. v. United States*, 775 Fed. Appx. 742, 745 (3d Cir. 2019). Likewise, while a showing that Wusterbarth acted within the scope of his employment is a threshold requirement for federal court jurisdiction under § 1346(b)(1), *CNA*, 535 F.3d at 140, Pennsylvania law controls the analysis of whether Wusterbarth acted within the scope of his employment. *Matsko v. United States*, 372 F.3d 556, 559 (3d Cir. 2004) (citing 28 U.S.C. § 1346(b)(1); *Aliota v. Graham*, 984 F.2d 1350, 1358 (3d Cir.1993)). Mrs. Bohnenkamp bears the burden of demonstrating that her claims fall within the scope of the FTCA's waiver of sovereign immunity. *Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013).

8

1.  The "scope of employment" issue cannot be decided on the current record.

The Government has properly raised the issue of Wusterbarth's scope of employment pursuant to Rule 12(b)(1).  *CNA*, 535 F.3d at 144.  And the Government properly identifies Wusterbarth's conduct, rather than Warden Trate's conduct, as the focus of the inquiry.  ECF No. 40, p. 7.  Although Mrs. Bohnenkamp alleges that Trate failed to properly supervise Wusterbarth, "plaintiffs under the FTCA cannot use a negligent supervision claim to circumvent the scope-of-employment condition of § 1346(b)(1)."  *Id.* at 149.  If the obligation to supervise the employee arises solely from the employment relationship, as Trate's obligation to supervise Wusterbarth does in this case, the focus of the scope-of-employment inquiry is on the employee who directly caused the harm to the plaintiff, not on the supervisor who failed to prevent it.  *Id.  See infra, II, F.*

In Pennsylvania, courts apply the Restatement (Second) of Agency's Section 228 to determine whether conduct is within the scope of employment.  *Matsko*, 372 F.3d at 559 (citing § 228; *Fitzgerald v. McCutcheon*, 270 Pa. Super. 102, 410 A.2d 1270, 1272 (1979)).  According to Section 228, "conduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master...."  *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000) (quoting Restatement (Second) Agency § 228 (1958)).  A plaintiff must establish each element to show that the act in question was within the scope of employment. *Matsko*, 372 F.3d at 559.  The foregoing test is factual in nature, and, as noted, the Court is authorized to resolve factual disputes where the defendant's Rule 12(b)(1) presents a factual attack. However, because the scope-of-employment jurisdictional issue "is intertwined with the merits of [the plaintiff's] FTCA claim," the Court "must take care not to reach the merits of [the] case when deciding a Rule 12(b)(1) motion."  *CNA*, 535 F.3d at 144.  *See also Brown v. United States*, 2018 WL

741731, at *7 (E.D. Pa. Feb. 7, 2018) (noting that the "court must…take care not to resolve the merits of the action and therefore should require less of a factual showing from plaintiff [regarding scope of employment] than would be required at trial"), *aff'd*, 823 Fed. Appx. 97 (3d Cir. 2020) (per curiam).

The Government has produced a Certification from the United States Attorney for this Judicial District reciting that Wusterbarth's conduct was outside the scope of his employment as a corrections officer.  ECF No. 40-1.  Such certifications are authorized by the Federal Employees Liability Reform and Tort Compensation Act of 1988 (FELRTCA), which amended the FTCA. *Melo v. Hafer*, 912 F.2d 628, 639 (3d Cir. 1990) (citing 28 U.S.C. §§ 1346(b), 2671– 2680 (1988)), *aff'd on other grounds*, 502 U.S. 21, 112 S. Ct. 358, 116 L.Ed.2d 301 (1991).  They are more commonly used by the Government to certify that an employee acted *within* the scope of his or her employment relative to actions challenged in a lawsuit and, thus, to facilitate the substitution of the United States in place of the employee under the FTCA or the removal of the action from state court to federal court.  *See id.* (citing 28 U.S.C. § 2679(d)(1) (1988)).  The United States Attorney General has delegated this certification authority to United States Attorneys in consultation with the Department of Justice.  *See* 28 U.S.C. § 510 (1988); 28 C.F.R. § 15.3(a) (1989).  FELRTCA confirms that "for suits based on certain negligent or wrongful acts of federal employees acting within the scope of their employment," an injured party's exclusive remedy is against the Government, not the federal employee.  *Melo*, 912 F.2d at 639 (citing 28 U.S.C. § 2679(b)(1) (1988)).

Such certifications are conclusive only in limited circumstances.  For a lawsuit filed initially in state court, the Attorney General's certification that the employee's actions were taken within the scope of his employment is mandatory for *removal* of the lawsuit from state to federal court.  *Melo*, 912 F.2d at 641 (citing 28 U.S.C. §2679(d)(2) ("This certification of the Attorney General shall

conclusively establish scope of office or employment *for purposes of removal*.") (emphasis in original)). *See also S.J. & W. Ranch Inc. v. Lehtinen*, 913 F.2d 1538, 1542 (11th Cir. 1990), *amended by S.J. & W. Ranch v. Lehtinen*, 924 F.2d 1555 (11th Cir.1991), *cert. denied*, 502 U.S. 813, 112 S. Ct. 62, 116 L. Ed.2d 37 (1991).   Once the lawsuit is removed—or if the lawsuit began in federal court—certification is not conclusive on the separate question of whether the United States must be substituted as a defendant in place of the federal employee.  *Schrob v. Catterson*, 967 F.2d 929, 936 (3d Cir. 1992).  The Third Circuit has held that "[a] district court may review the government's certification that the actions" of a federal employee were undertaken "within the scope of his employment."  *Melo*, 912 F.2d at 642.  *See also Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420, 115 S. Ct. 2227, 132 L.Ed.2d 375 (1995) ("the scope-of-employment certification is reviewable in court"); *Lehtinen*, 913 F.2d at 1542 ("[O]nce in federal court a plaintiff is entitled to litigate the question of whether the employee was acting within the scope of his employment when the challenged conduct occurred.").

Here, the United States Attorney certified that Wusterbarth's acts *were not* within the scope of his employment.  ECF No. 40-1.  The Government has not identified any authority for the proposition that this negative certification is binding upon the Court, and any argument to that effect would be contrary to the Third Circuit's directive that the scope of employment issue be decided according to state law.  *See Matsko* 372 F.3d at 559 (citing 28 U.S.C. § 1346(b)(1)).  While carrying some weight, neither the Certification nor anything else in the record provides any meaningful information concerning Wusterbarth's scope of employment or his job responsibilities. The Amended Complaint does allege, however, that Wusterbarth's position authorized him to interact with visitors such as Mrs. Bohnenkamp and to have access to visitors' private information. The fact that Wusterbarth is alleged to have abused this authority does not necessarily mean that he acted outside the scope of his employment.  *See Potter Title & Tr. Co. v. Knox*, 381 Pa. 202, 207, 113 A.2d 549, 551 (1955) (noting that "when an act is done in the course of one's employment the

employer will not ordinarily be excused from liability although the employee abused his authority

and thereby inflicted injury upon another"). Indeed, "an act, although forbidden or done in a

forbidden manner, may be within the scope of employment." *Brumfield v. Sanders*, 232 F.3d 376, 381

(3d Cir. 2000) (quoting Restatement (Second) of Agency § 230); *Aliota v. Graham*, 984 F.2d 1350,

1358-59 (3d Cir. 1993). *See also Fitgerald*, 410 A.2d at 1271 (noting that *respondeat superior* liability "may

extend even to intentional or criminal acts committed by the servant").

Several of Wusterbarth's contacts and communications with Mrs. Bohnenkamp upon which

she bases her claims occurred while Wusterbarth was present and on-duty at FCI-McKean and

performing his job in the prison's visiting area. Indeed, Wusterbarth's initial unwelcome overtures

to Mrs. Bohnenkamp occurred during her first visit to the family area at FCI-McKean when

Wusterbarth, the officer on duty, summoned her to his station and asked her to disclose personal

identifying information, including her telephone number. ECF No. 30, ¶¶ 19-25. Wusterbarth

successfully obtained this information from Mrs. Bohnenkamp using both his authority as a

corrections officer and the pretense of having information concerning her incarcerated husband that

he would have acquired in his capacity as a corrections officer. *Id.*, ¶¶ 23-25. At 4:03 pm that same

day, Wusterbarth used the telephone number he obtained from Mrs. Bohnenkamp to contact her

and make further overtures to meet with her, again representing that the purpose of the meeting was

to discuss information concerning her husband. *Id.*, ¶ 28. The next day, Mrs. Bohnenkamp

returned to FCI McKean with her two sons to visit her husband and was again approached by

Wusterbarth who was on duty. On this occasion, Wusterbarth instructed Mrs. Bohnenkamp that

she needed to "keep silent" about his inquiries. *Id.*, ¶ 37. Mrs. Bohnenkamp understood this

communication to be a threat and associated it with Wusterbarth's authority over her husband. *Id.*

Although an abuse of his authority, this and other conduct by Wusterbarth appear to have been "of

the kind the employee [Wusterbarth] [wa]s employed to perform"—interaction with visitors to FCI-

12

McKean; it "occur[red] within the time and space of employment"—while Wusterbarth was on duty at FCI-McKean; and it was "actuated, at least in part, by a purpose to serve the master." *Brumfield*, 232 F.3d at 380 (quoting Restatement (Second) Agency § 228); *Matsko*, 372 F.3d at 559.

The Government argues that certain of Wusterbarth's alleged misconduct towards Mrs. Bohnenkamp occurred after he was no longer employed by the Bureau of Prisons.  ECF No. 40, p. 8.  While the Government may ultimately establish this factually, the timing of Wusterbarth's actions relative to the end of his employment is not clear from the existing record.  And this is not the only gap in the record concerning the scope of employment inquiry.  During oral argument on its motion, the Government acknowledged that a "job description" for Wusterbarth's position exists but is not currently part of the record.  The job description is likely to provide relevant information concerning the breadth of Wusterbarth's authority, particularly given Mrs. Bohnenkamp's allegations that certain of Wusterbarth's misconduct occurred squarely within the time and place parameters of his employment.  Here, the "difficulties of separating out the jurisdictional nexus from factual issues that go to the merits of the claim" caution against ruling that Wusterbarth acted outside the scope of employment issue at this stage of the proceeding.  *See Mortensen*, 549 F.2d at 892–94.  Given the undeveloped nature of the record regarding the scope of Wusterbarth's employment and the intertwined nature of this issue with the merits of Mrs. Bohnenkamp's claims, it is premature to resolve this issue on the Government's pending motion.

> 2.  Mrs. Bohnenkamp's intentional infliction of emotional distress and invasion of privacy claims are barred in part but not entirely by the "intentional tort" exception to the FTCA's limited waiver of sovereign immunity.

Even where the threshold six requirements of § 1346(b)(1) are satisfied, Congress explicitly excepted a variety of conduct from its limited waiver of sovereign immunity.  One such exception, 28 U.S.C. § 2680(h), provides that the United States will not be liable for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel,

slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). The

Supreme Court has referred to § 2680(h) as the "intentional tort exception" to the FTCA's waiver of

sovereign immunity. *Millbrook v. United States*, 569 U.S. 50, 52, 133 S. Ct. 1441, 1442, 185 L. Ed. 2d

531 (2013) (citation omitted). And Mrs. Bohnenkamp expressly conceded in her principal brief that

"the FTCA does not permit any claims against it for intentional torts" and that "Wusterbarth's

conduct…sounds in intentional tort…" ECF No. 49, p. 5. Despite this concession, the Court is

compelled to note that the "shorthand description" of § 2680(h) as the "intentional tort" exception

"is not entirely accurate" as it "does not remove from the FTCA's waiver all intentional torts, e.g.,

conversion and trespass…" *Levin v. United States*, 568 U.S. 503, 507 n.1, 133 S. Ct. 1224, 1228 n. 1,

185 L. Ed. 2d 343 (2013).

Because § 2680(h) includes the language "[a]ny claim arising out of" the several enumerated

intentional torts, "a court must look, not to the theory upon which the plaintiff elects to proceed,

but rather to the substance of the claim which he asserts." *Lambertson v. United States*, 528 F.2d 441,

443 (2d Cir. 1976). In doing so, the court must examine whether "the underlying governmental

conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim." *Metz v.

United States*, 788 F.2d 1528, 1534 (11th Cir. 1986) (citing *Block v. Neal*, 460 U.S. 289, 103 S. Ct. 1089,

1094, 75 L.Ed.2d 67 (1983) ("In this case…the Government's misstatements are not essential to

plaintiff's negligence claim"; "the partial overlap between these two tort actions does not support

the conclusion that if one is excepted under the Tort Claims Act, the other must be as well.")). For

example, courts have ruled that "defamation suits against the United States are prohibited" because

they arise out of "libel, slander, misrepresentation [or] deceit." *Brumfield v. Sanders*, 232 F.3d 376, 382

(3d Cir. 2000). Courts have also held that the intentional tort of false light invasion of privacy arises

out of libel and slander and cannot support liability against the Government. *See, e.g., Metz v. United*

*States*, 788 F.2d 1528, 1535 (11th Cir. 1986); *Johnson v. Sawyer*, 47 F.3d 716, 732 n. 34 (5th Cir. 1995) ("'false light' invasion of privacy essentially amounts to libel, slander, or misrepresentation.").

The Amended Complaint asserts an intentional infliction of emotional distress claim (Count II) and an invasion of privacy claim (Count III) against Wusterbarth.  ECF No. 30.  Although Mrs. Bohnenkamp labeled her FTCA claim against the Government (Count I) as sounding in "negligence," she specifically alleged that the Government is directly liable for Wusterbarth's intentional misconduct.  *Id.*, ¶¶ 81-87.  Section 2680(h) of the FTCA does not specifically list intentional infliction of emotional distress as one of the torts within the exception to the Government's general waiver of sovereign immunity.  Nevertheless, "the FTCA precludes claims of intentional infliction of emotional distress if they 'arise out' of an enumerated 'exception' under the FTCA."  *McCluskey v. United States*, 2010 WL 4024717, at *8 (W.D. Pa. Oct. 12, 2010) (citing *Borawski v. Henderson*, 265 F.Supp.2d 475, 484 (D.N.J. 2003); *Gonzalez–Jiminez De Ruiz v. United States*, 378 F.3d 1229, 1231 n. 3 (11th Cir. 2004) (stating "if the plaintiffs' allegations of deceit are essential to their intentional infliction of emotional distress claim, we lack jurisdiction under the FTCA to entertain that claim").

Here, Mrs. Bohnenkamp's allegations of Wusterbarth's misrepresentations and deceit form a part of her intentional infliction of emotional distress claim.  Misrepresentation under Pennsylvania tort law requires (1) a representation, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false, (4) with the intent of misleading another into relying on it, (5) justifiable reliance on the misrepresentation, and (6) that the resulting injury was proximately caused by the reliance.  *Gibbs v. Ernst*, 538 Pa. 193, 207, 647 A.2d 882, 889 (1994) (citing W. Page Keaton, *Prosser and Keaton on the Law of Torts* § 105 (5th ed. 1984); Restatement (Second) of Torts § 525 (1977)).  "What has become known as the

'misrepresentation exception,' therefore, bars recovery for claims for intentional or negligent concealment, misrepresentation, or omission of material fact." *Nicklas v. United States*, 2014 WL 309323, at *2 (W.D. Pa. Jan. 27, 2014) (citing *United States v. Neustadt*, 366 U.S. 696, 705–06, 708–09, 81 S. Ct. 1294, 6 L.Ed.2d 614 (1961); *Block v. Neal*, 460 U.S. 289, 298, 103 S. Ct. 1089, 75 L.Ed.2d 67 (1983); and *Reynolds v. United States*, 643 F.2d 707, 712 (10th Cir.1981) (The "misrepresentation" exception of 28 U.S.C. § 2680(h) "has been broadly construed to include false representations of any type.")).

The Amended Complaint alleges that Wusterbarth repeatedly misrepresented information concerning her husband and Wusterbarth's need to communicate with her. The Amended Complaint further alleges that Wusterbarth's intentional misrepresentations and her reliance upon them resulted in her severe emotional distress. *See Ohama v. Markowitz*, 434 F. Supp. 3d 303, 317 (E.D. Pa. 2020), *reconsideration denied*, 2020 WL 1124402 (E.D. Pa. Mar. 6, 2020) (misrepresentation requires material misrepresentation that induces justifiable reliance resulting in a detriment). Her reliance on a misrepresentation is thus essential to her claim for intentional infliction of emotional distress, and to the extent Mrs. Bohnenkamp bases her intentional infliction of emotional distress claim upon Wusterbarth's misrepresentations and deceit, her claim is barred by § 2680(h). *Nicklas*, 2014 WL 309323, at *2-3 (intentional infliction of emotional distress claim barred because emotional distress arose from plaintiff's reliance on a misrepresentation about her husband's cause of death from a Veterans' Administration doctor).

But Mrs. Bohnenkamp also complains of emotional distress arising from Wusterbarth's unwanted sexual advances. See ECF No. 30, ¶¶ 37, 82-85. Intentional infliction of emotional distress claims arising out of such conduct have been found to fall outside the scope of the intentional tort exception. *See Jense v. Runyon*, 990 F. Supp. 1320, 1330 (D. Utah 1998) (allowing

intentional infliction of emotional distress claim to proceed where plaintiff alleged a mail carrier "asked her invasive sexual questions, made unwanted sexual advances, and paid her unwelcome attention by visiting her on her mail route," which the court held was "the core or substance of her claim," even though later acts rose to the level of assault by a threat of violence and battery by offensive touching). *See also Ruddy v. United States*, 2011 WL 5834953, at *4 (M.D. Pa. Nov. 21, 2011) ("intentional infliction of emotional distress…based on the months of systemic harassment" not excluded by § 2680(h); *Xue Lu v. Powell*, 621 F.3d 944, 950 (9th Cir. 2010) (holding that "emotional distress suffered as a result of the demand for sexual favors is an injury distinct from the battery and may be proved by the plaintiffs"). *Compare Doe v. United States*, 618 F. Supp. 503, 506-07 (D.S.C. 1984) (dismissing FTCA suit because the intentional infliction of emotional distress claim arose from the assailant's conduct in exposing himself and suggesting sexual acts and thus arose from an assault). To the extent Mrs. Bohnenkamp's intentional infliction of emotional distress claim is based on allegations of harassment and unwanted sexual advances, it is not subject to the intentional tort exception and falls within this Court's FTCA subject matter jurisdiction.

The Government argues that certain of Wusterbarth's alleged conduct upon which Mrs. Bohnenkamp bases her intentional infliction of emotional distress claim went beyond harassment and constituted an "assault" under Pennsylvania law, which would place it squarely within the intentional tort exception. *See* ECF No. 66, p. 8. The Government specifically points to Mrs. Bohnenkamp's allegations that "Wusterbarth once made a threatening gesture and sent multiple threatening text messages to her, and that his actions caused her fear." *Id.* (citing ECF No. 30 ¶¶ 26, 37, 52, 82, 93, 103). The Government contends that "[t]he substance of these claims plainly arises out of an alleged 'assault,' as defined by Pennsylvania law." *Id.* (citing ASSAULT, Pa. SSJI (CIV), 17.10 ("An assault is an act done with the intent to put another in reasonable and immediate fear of a harmful or offensive contact with his or her body and that does, in fact, cause such fear.")).

Contrary to the Government's assertions, the existing record is far from clear that Wusterbarth's alleged actions rose to the level of an assault. One "element of civil assault is the intention to put another person in apprehension of an *immediate* battery or harmful or offensive bodily contact." *Napier v. City of New Castle*, 2007 WL 1965296, at *8 (W.D. Pa. July 3, 2007) (emphasis supplied, citations omitted), *aff'd* 407 Fed. Appx. 578 (3d Cir. 2010). "Indeed, it is well settled in Pennsylvania, that 'words or threats alone are insufficient to put a person in reasonable apprehension of physical injury or offensive touching.'" *Id.* (quoting *Kahle v. Glosser Bros., Inc.*, 462 F.2d 815, 817 n. 4 (3d Cir.1972). *See also Cucinotti v. Ortmann*, 399 Pa. 26, 26, 159 A.2d 216, 217 (1960) ("Words in themselves, no matter how threatening, do not constitute an assault; the [defendant] must be in a position to carry out the threat immediately, and he must take some affirmative action to do so"). Conditional words negate the threat of an imminent assault.[3] *See United States v. Shropshire*, 20 U.S.C.M.A. 374, 376, 43 C.M.R. 214, 216 (1971).

At best, the record is ambiguous whether any of Wusterbarth's statements or actions could be construed as threatening imminent harm to Mrs. Bohnenkamp that he would imminently harm Mrs. Bohnenkamp when he gestured to her to keep silent on her second time seeing him in FCI-McKean's visitors' room. *See* ECF No. 30, ¶¶ 37, 48-49. Based on the current record, the Court cannot say as a matter of law that any one or a combination of Wusterbarth's statements or gestures conveyed an immediate or imminent threat of a battery or offensive touching against Mrs. Bohnenkamp. *See Jense*, 990 F. Supp. at 1330 (holding that intentional infliction of emotional distress claim was not barred by § 2680(h) because threats "directed at preventing [the plaintiff]

---

[3] This principle has deep roots dating back to English common law. In the seminal case of *Tuberville v. Savage*, the Kings Bench found no assault where the defendant placed his hand on his sword's hilt and said, ""If it were not assize-time, I would not take such language from you," because his words negated any intent to inflict immediate harm. *See Tuberville v. Savage*, 1 Mod. Rep. 3, 86 Eng Rep. 684 (1699).

from reporting the sexual harassment" were distinct from the underlying assaultive conduct). Resolution of this factual issue will have to await a more developed record.

Furthermore, to the extent the Government is correct that aspects of Wusterbarth's conduct constituted an assault, it may be subject to the "law enforcement proviso" of 28 U.S.C. § 2680(h). This proviso authorizes the Government to be sued for six of the intentional torts listed in § 2680(h)—assault, battery, false imprisonment, false arrest, abuse of process, and malicious prosecution—when any of those torts is committed by an "investigative or law enforcement officer" in the scope of his or her employment.  *See Pellegrino v. United States of Am. Transportation Sec. Admin.*, 937 F.3d 164, 169–70 (3d Cir. 2019) (en banc).  "For the purpose of this [proviso], 'investigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."  28 U.S.C. § 2680(h).  The Government acknowledged that Wusterbarth, in his capacity as a federal corrections officer, possessed the authority specified in the proviso's definition of "investigative or law enforcement officer."  ECF No. 66, p. 9.  Accordingly, the Government also acknowledged in its supplemental brief and at oral argument that, assuming Wusterbarth was acting within the scope of his employment, "it would appear that the conduct that constitutes assault could fall within the law enforcement proviso."  *Id.*  This further supports the Court's exercise of FTCA subject matter jurisdiction in this case, at least at this stage of the proceeding.

Mrs. Bohnenkamp's invasion of privacy claim also does not appear to arise from any of the intentional torts enumerated in § 2680(h).  The tort of invasion of privacy in its intrusion on seclusion form requires "an intentional intrusion upon the seclusion of [plaintiff's] private concerns which was substantial and highly offensive to a reasonable person, and …sufficient facts to establish that the information disclosed would have caused mental suffering, shame or humiliation to a

person of ordinary sensibilities." *Boring v. Google Inc.*, 362 Fed. Appx. 273, 279 (3d Cir.2010) (quoting *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 570 Pa. 242, 809 A.2d 243, 247 (Pa.2002)).  The privacy invasion may occur (1) by physical intrusion into a place where the plaintiff has secluded himself, (2) by use of the defendant's senses to oversee or overhear the plaintiff's private affairs, or (3) some other form of investigation or examination into plaintiff's private concerns." *Harris by Harris v. Easton Publishing Co.*, 483 A.2d 1377, 1383-84 (Pa. Super. 1984).  Further, unlike libel and slander claims, intrusion on seclusion invasion of privacy does not require the element of publicity. *Harris by Harris v. Easton Publishing Co.*, 483 A.2d 1377, 1383-84 (Pa. Super. 1984).  A "false light" invasion of privacy claim requires publication and is thus within the genus of defamation, libel, and slander claims that § 2680(h) of the FTCA specifically excludes from jurisdiction.  *See Johnson,* 47 F.3d at 732 n. 34; *Nothstein v. USA Cycling*, 2020 WL 6504585, at *17 (E.D. Pa. Nov. 5, 2020) (discussing nature of invasion of privacy and defamation claims).  In contrast, an invasion of privacy claim based upon a theory of "intrusion upon seclusion" may fall outside scope of § 2680(h).  *Ruddy*, 2011 WL 5834953, at *4. (holding § 2680(h) did not bar claim based on defendants "eavesdropping on his private phone call").

In this case, Mrs. Bohnenkamp's intrusion upon seclusion claim is premised upon allegations that Wusterbarth used his position and authority to secure personal information concerning her address and other identifying information as well as information concerning her husband and children, all of which he used to pursue an unwanted sexual relationship and to harass her.  These allegations distinguish her claim from a libel or slander claim subject to the intentional tort exception.  Accordingly, the Court finds that Mrs. Bohnenkamp's invasion of privacy claim also falls within this Court's FTCA subject matter jurisdiction to the extent it is based on a theory of intrusion upon seclusion.

3.   Mrs. Bohnenkamp exhausted her administrative remedies concerning her
negligent hiring and supervision claim.

The Government argues that Mrs. Bohnenkamp did not satisfy the FTCA's exhaustion

requirements regarding her "negligent hiring or supervision" claim because the facts asserted in her

administrative claim "did not put the BOP on notice of [this] potential claim …."  ECF No. 40, p.

18.  In response, Mrs. Bohnenkamp argues that the FTCA does not require a plaintiff "to state every

cause of action which it might pursue against the United States if the claim is not administratively

satisfied."  ECF No. 49.

The exhaustion requirement applicable to Mrs. Bohnenkamp's claim states in pertinent part

as follows:

> An action shall not be instituted upon a claim against the
> United States for money damages for injury or loss of
> property or personal injury or death caused by the negligent
> or wrongful act or omission of any employee of the
> Government while acting within the scope of his office or
> employment, unless the claimant shall have first presented the
> claim to the appropriate Federal agency and his claim shall
> have been finally denied by the agency in writing and sent by
> certified or registered mail.

28 U.S.C. § 2675(a).

This exhaustion requirement "is jurisdictional and cannot be waived."  *Deutsch v. United States*,

67 F.3d 1080, 1091 (3d Cir. 1995) (quoting *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003)).

Accordingly, "[f]ederal courts cannot assume jurisdiction over FTCA claims until the plaintiff has

first presented his claim to the appropriate federal agency and the claim has been denied."  *Priovolos*

*v. Fed. Bureau of Investigation*, 686 Fed. Appx. 150, 152 (3d Cir. 2017) (*citing* 28 U.S.C. § 2675(a); *White-*

*Squire v. U.S. Postal Serv.*, 592 F.3d 453, 457 (3d Cir. 2010)).  "To be properly presented to the federal

agency, the damages claim must be for a sum certain."  *Deutsch*, 67 F.3d at 1091 (citing 28 C.F.R.

§ 14.2(a) (1987)).  "A 'claim' as that term is used in § 2675 includes a written statement describing

the injury in sufficient detail to allow the agency to begin an investigation into the possibility of potentially tortious conduct and a request for a sum certain in damages." *Parker v. United States*, 2019 WL 2636620, at *6 (D.N.J. June 27, 2019) (citing *Tucker v. U.S. Postal Serv.*, 676 F.2d 954, 959 (3d Cir. 1982); *Estate of Trentadue ex el Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005)). "Although an administrative claim need not propound every possible theory of liability in order to satisfy section 2675(a), ... a plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts." *Roma*, 344 F.3d at 362 (quoting *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1011-12 (7th Cir. 1991)).  Further, while a claimant "need not provide exhaustive detail" in his administrative claim, he "may not present a claim to an agency only to pivot to other, disparate claims upon reaching the courts." *Weiner v. United States*, 2014 WL 7404135, at *3 (E.D. Pa. Dec. 30, 2014) (citing *Roma*, 344 F.3d at 362).  The plaintiff bears the burden to show compliance with the FTCA's exhaustion requirement.  *See McNeil v. United States*, 508 U.S 106, 109, 113 S. Ct. 1980, 124 L.Ed.2d 21 (1993).

The "Basis of Claim" portion of Mrs. Bohnenkamp's claim to the BOP stated in its entirety:

> While visiting her husband Christopher Bohnenkamp at FCI McKean. 6975 PA-59, Lewis Run, PA 16738, Mrs. Bohnenkamp was approached by a CO Wusterbarth, who told her that he needed to speak with her about her husband in private. Later that day, after Mrs. Bohnenkamp left FCI McKean, CO Wusterbarth called Mrs. Bohnenkamp on her cell phone and said he needed to meet with her, because he was attracted to her. Mrs. Bohnenkamp rejected CO Wusterbarth's advances repeatedly, and refused to make plans to meet with him. At that point, CO Wusterbarth advised that Mrs. Bohnenkamp's husband Christopher would be in serious danger if she ever revealed what CO Wusterbarth had said and done. Over the next several months, CO Wusterbarth harassed and threatened Mrs. Bohnenkamp and her children, including making a phone call that Mr. Bohnenkamp had died in prison, and sending fake letters from Mr. Wusterbarth to his family. Warden Trate was aware

> that CO Wusterbarth had a history of harassing women at
> FCI McKean.

ECF No. 40-3, p. 3.

"[T]he Third Circuit has held that an administrative tort claim alleging negligence and an administrative tort claim alleging negligent training or supervision are distinct and must be alleged separately for the District Court to have jurisdiction under the FTCA." *Coleman v. United States*, 2016 WL 1241800, at *4 (D.N.J. Mar. 30, 2016) (citing *Davila-Bajana v. Sherman*, 278 Fed. Appx. 91, 94 (3d Cir. 2008)). The court in *Coleman* dismissed an FTCA claim for negligent hiring, training, and supervision even though the administrative claim properly alleged negligent medical care. *Coleman*, 2016 WL 1241800, at *4. Another district court dismissed an FTCA claim for negligent hiring, training, or supervision when two administrative claims made no mention of these claims "and did not identify any supervisors." *Baldwin v. Brown*, 2021 WL 1138148, at *6-7 (D.N.J. Mar. 25, 2021) (slip copy).

Here, Mrs. Bohnenkamp's claim suffers no such deficiency. Although the claim focused on Wusterbarth's conduct, the final sentence stated, "Warden Trate was aware that CO Wusterbarth had a history of harassing women at FCI McKean." *Id.* Unlike in *Baldwin* where the plaintiff failed to identify any supervisors as a part of the claim, Mrs. Bohnenkamp identified Trate as the Warden of FCI-McKean and affirmatively alleged a factual basis for a negligent supervision claim arising out of his knowledge of similar misconduct on the part of Wusterbarth. This was sufficient to satisfy § 2675(a)'s exhaustion requirement as to her negligent supervision claim. "[T]he purpose of the notice requirement is to encourage investigation and settlement of claims before legal proceedings are initiated, thereby reducing the burden on the courts and the government." *Hause v. United States*, 378 Fed. Appx. 158, 159 (3d Cir. 2010). It does not require the claimant to "propound every possible theory of liability." *See Roma*, 344 F.3d at 362. *See also Weiner v. United States*, 2014 WL 7404135, at

*2, *5-6 (E.D. Pa. Dec. 30, 2014) (allowing negligent supervision and failure to train claim even though administrative claim did not explicitly mention those legal theories).  The facts of Mrs. Bohnenkamp's administrative claim provided enough notice to the Government to allow it to investigate her claim based on Warden Trate's alleged negligent supervision of Wusterbarth. Nevertheless, as discussed below, this claim falls outside of the Government's limited waiver of sovereign immunity and this Court's FTCA subject matter jurisdiction.

> 4.   Mrs. Bohnenkamp cannot maintain a negligent hiring or negligent supervision claim against the Government under the *Sheridan* "independent duty" exception.

Mrs. Bohnenkamp also argues that the FTCA confers jurisdiction over her negligent hiring and supervision claim against the Government under the Supreme Court's decision in *Sheridan v. U.S.*, 487 U.S. 392, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988).   She asserts that "Warden Trate's duty to competently supervise Defendant Wusterbarth is entirely separate from Defendant Wusterbarth's own intentional conduct."  ECF No. 49, p. 5.  Because the Government had an independent duty to supervise Wusterbarth, her argument continues, it can be held liable for Wusterbarth's misconduct even if some of this misconduct falls within the intentional tort exception or outside the scope of his employment.

In *Sheridan*, the Court stated that "in at least some situations the fact that an injury was directly caused by an assault or battery will not preclude liability against the government for negligently allowing the assault to occur."  487 U.S. at 398, 108 S. Ct. 2449.  The Court found that it was possible for a claim to be made against the Government if the plaintiff could show that there was negligence arising out of an independent, antecedent duty unrelated to the employment relationship between the tortfeasor and the Government.  *Id.* at 401–02.  Such an antecedent duty and negligence by a government employee could give rise to liability, provided "that similar negligent conduct would support recovery under the law of the State where the incident occurred."  *Id.* at 399.

In *Sheridan*, the Court found that the alleged negligence of other government employees who allowed a foreseeable assault and battery to occur might impose liability under the applicable state "Good Samaritan" law and specific naval base safety regulations.   487 U.S. at 401–02 & n. 5. Government employees had a duty under the Good Samaritan law and naval base regulations that applied regardless of whether the assailant was a private citizen or a federal employee, thus creating an independent basis for liability unrelated to the assailant's employment status.   *Id.*

In *CNA*, the Court of Appeals characterized *Sheridan* as "an exception to an exception to an exception to a general rule," explaining:

> The general rule is sovereign immunity: the Government cannot be sued. The FTCA creates an exception to that rule by waiving sovereign immunity. That waiver of sovereign immunity comes with conditions (such as the scope-of-employment requirement of § 1346(b)(1)) and exceptions (such as the assault-and-battery exception of § 2680(h)). But *Sheridan* established that claims of independent negligence committed by Government employees are not barred by the assault-and-battery exception.

535 F.3d at 148.

The *Sheridan* exception only applies, however, where "the employment status of the assailant has nothing to do with the basis for imposing liability on the government."   *Sheridan.* 487 U.S. at 402.   Thus, "[i]ndependent negligence in this context means negligence irrespective of an employment relationship."   *CNA*, 535 F.3d at 149 (3d Cir. 2008) (citing *Sheridan*, 487 U.S. at 397–98, 108 S. Ct. 2449).   Here, Mrs. Bohnenkamp has identified no duty of care arising from a source other than the employment relationship that existed among the Government, Wusterbarth, and Warden Trate.   ECF No. 49, p. 5 ("Warden Trate possessed an independent duty of care *to supervise its employees*, and he breached that duty when he failed to take action despite his knowledge of Defendant Wusterbarth's behavior." (emphasis supplied)).   In *CNA*, the Court also emphasized that

"plaintiffs under the FTCA cannot use a negligent supervision claim to circumvent the scope-of-employment condition of § 1346(b)(1)." 535 F.3d at 149. "They must allege truly independent negligence, analogous to the naval-base safety regulations and voluntar[y] undertaking to provide care to a person who was visibly drunk" that were at issue in *Sheridan*." *Id.* (citing *Sheridan*, 487 U.S. at 401, 108 S. Ct. 2449).

"Negligent supervision claims," like Mrs. Bohnenkamp's claim against the Government in this case, "are rooted in supervisor-supervisee relationships at work; they relate closely to the supervisee's … employment status" and, therefore, are outside of the *Sheridan* exception. *CNA*, 535 F.3d at 149. Under Pennsylvania law, a negligent supervision claim "is specifically predicated on two duties of an employer: the duty to reasonably monitor and control the activities of an employee, and the duty to abstain from hiring an employee and placing that employee in a situation where the employee will harm a third party." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 488 (3d Cir. 2013) (footnote omitted) (citing *Hutchison v. Luddy*, 560 Pa. 51, 742 A.2d 1052, 1059–60 (1999)).

The Court of Appeals for the Third Circuit has identified the elements a plaintiff must establish to recover for negligent supervision under Pennsylvania law in two parallel formulations. One describes the plaintiff's loss as resulting from "(1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment, (2) that is committed on the employer's premises, (3) when the employer knows or has reason to know of the necessity and ability to control the employee." *Belmont*, 708 F.3d at 487–88 (citing *Dempsey v. Walso Bureau, Inc.*, 431 Pa. 562, 246 A.2d 418, 420 (1968); *Heller v. Patwil Homes, Inc.*, 713 A.2d 105, 107–08 (Pa.Super.Ct.1998)). Under the second formulation, liability arises "where the employer fails to exercise ordinary care to prevent an intentional harm to a third party which (1) is committed on the employer's premises by an employee acting outside the scope of his employment and (2) is

26

reasonably foreseeable.''[4]  *Belmont*, 708 F.3d at 489 n.24 (*citing Petruska v. Gannon Univ.*, 462 F.3d 294, 309 n. 14 (3d Cir.2006) (internal quotation marks omitted)).  Therefore, a government agency's negligent supervision of an employee who commits an intentional tort normally will not fall within the exception recognized in *Sheridan* because the duty arises directly from the employer-employee relationship.[5]  *Id.*

Any claim relating to Warden Trate's supervision of Wusterbarth arises directly from Wusterbarth's employment.  Mrs. Bohnenkamp has not offered any independent, antecedent duty unrelated to the employment relationship between Wusterbarth and the Government to trigger the *Sheridan* exception.  Accordingly, she cannot invoke *Sheridan* as a basis for asserting an FTCA claim to the extent that claim arises from conduct outside the scope of Wusterbarth's employment or is otherwise barred by the intentional tort exception to the FTCA.

> 5.    The discretionary function exception to the FTCA also bars Mrs. Bohnenkamp's negligent hiring and supervision claim, but this exception does not bar her *respondeat superior* claim based on Wusterbarth's misconduct within the scope of his employment and outside of the intentional tort exception.

The "discretionary function exception" of the FTCA excludes from the United States' waiver of sovereign immunity any claim "based upon the exercise or performance or the failure to

---

[4] The two definitions "are the same, but the former emphasizes the foreseeability of the need to control the employee, while the latter stresses the foreseeability of the harm the employee causes."  *Belmont*, 708 F.3d at 489 n. 24.

[5] In *Matsko v. United States*, 372 F.3d 556 (3d Cir. 2004), the Court of Appeals held that the *Sheridan* exception applied where the plaintiff, who had been physically assaulted by a mine safety inspector on government property, "asserted a premises liability theory" based on the Restatement (Second) of Torts § 344.  372 F.3d at 561 & n. 10. Section 344, which has been adopted in Pennsylvania, recognizes a duty on the part of a possessor of land, independent of any employment relationship, to protect invitees to his property from "*physical harm* caused by the accidental, negligent, or intentionally harmful acts of third persons." *Id.* (quoting § 344) (emphasis added).  In applying *Sheridan* to the facts of that case, the Court of Appeals emphasized that the plaintiff's claim "*does not stem from negligent hiring, training, or supervision, but arises solely out of the § 344 duty.*" *Id.* (emphasis supplied).  Here, Mrs. Bohnenkamp does not allege premises liability or that she suffered any physical harm.  Further, in contrast to *Matsko*, Mrs. Bohnenkamp expressly bases her claim against the United States upon Warden Trate's negligent hiring and supervision of Wusterbarth.  In *Gaffney v. United States*, 2015 WL 1409674, at *1 (M.D. Pa. Mar. 26, 2015), the court also relied upon § 344 to find a duty independent of the employment relationship based upon the plaintiff's premises liability theory where a federal administrative law judge physically assaulted a visitor to a Social Security office.  Again, Mrs. Bohnenkamp has not alleged any physical harm; nor has she cited to § 344, *Matsko*, or *Gaffney* as a basis for finding an independent duty on the part of the Government in this case.

exercise or perform a discretionary function or duty on the part of a federal agency or an employee

of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  This

exception limits the FTCA's waiver of sovereign immunity by "eliminating jurisdiction for claims

based upon the exercise of a discretionary function on the part of an employee of the government."

*Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013) (citing 28 U.S.C. § 2680(a)).  Congress enacted

this exception to "prevent judicial 'second-guessing' of legislative and administrative decisions

grounded in social, economic, and political policy through the medium of an action in tort."  *United

States v. Varig Airlines*, 467 U.S. 797, 814, 104 S. Ct. 2755, 81 L.Ed.2d 660 (1984).  The United States

has the burden of establishing the applicability of the discretionary function exception.  *See Merando

v. United States*, 517 F.3d 161, 164 (3d Cir. 2008) (citations omitted); *Cestonaro v. United States*, 211 F.3d

749, 756 n.5 (3d Cir. 2000).

The Supreme Court has provided a two-part test to be used in deciding whether the

discretionary function exception protects a government employee's conduct.  *See United States v.

Gaubert*, 499 U.S. 315, 322-23, 111 S. Ct. 1267, 113 L. Ed.2d 335 (1991); *Berkovitz v. United States*, 486

U.S. 531, 536-37, 108 S. Ct. 1954, 100 L.Ed.2d 531 (1988); *Varig Airlines*, 467 U.S. at 808-14, 104

S. Ct. 2755.  First, the Court must determine whether the conduct at issue was in fact "discretionary

in nature"—in other words, whether it involved "'an element of judgment or choice.'"  *Gaubert*, 499

U.S. at 322, 111 S. Ct. 1267 (quoting *Berkovitz*, 486 U.S. at 536, 108 S. Ct. 1954).  This prong of the

two-part test is not satisfied where a "'federal statute, regulation, or policy specifically prescribes a

course of action for an employee to follow,' because 'the employee has no rightful option but to

adhere to the directive.'"  *Id.* (quoting *Berkovitz*, 486 U.S. at 536, 108 S. Ct. 1954).

Second, the Court must determine whether the conduct at issue is "'of the kind that the

discretionary function exception was designed to shield.'"  *Id.* (quoting *Berkovitz*, 486 U.S. at 536, 108

S. Ct. 1954).  The exception "marks the boundary between Congress' willingness to impose tort

liability upon the United States and its desire to protect certain governmental activities from

exposure to suit by private individuals." *Varig Airlines*, 467 U.S. at 808, 104 S. Ct. 2755.  "[W]hen

properly construed, the exception 'protects only governmental actions and decisions based on

considerations of public policy.'"  *Gaubert*, 499 U.S. at 323, 111 S. Ct. 1267 (quoting *Berkovitz*, 486

U.S. at 537, 108 S. Ct. 1954).  Thus, the focus of this inquiry is not on the employee's "subjective

intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions

taken and on whether they are susceptible to policy analysis." *Id.* at 325.

Before beginning such analysis, however, the Court must identify the specific conduct or

actual challenged action at issue.  *See Cestonaro*, 211 F.3d at 753.  In this case, Mrs. Bohnenkamp's

Amended Complaint and Brief in Opposition to the United States' Motion to Dismiss describe the

Government's challenged conduct in two related ways.  First, she asserts that Warden Trate failed to

properly screen Wusterbarth before hiring him at FCI-McKean and supervise his employment

activities after he was hired.   ECF No. 30, ¶¶77-79; ECF No. 49, pp. 8-9.  Second, she claims that

Trate and other prison officials failed in their duty "to ensure the safety of everyone in a prison,

including visitors such as Ms. Bohnenkamp."   ECF No. 30, ¶ 74; ECF No. 49, p. 8.  In support of

her position, Mrs. Bohnenkamp cites *Whitley v. Albers*, 475 U.S. 312, 320, , 106 S. Ct. 1078, 89

L.Ed.2d 251 (1986) for the proposition that "prison administrators are charged with the

responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors, as well

as the 'obligation to take reasonable measures to guarantee the safety of the inmates themselves.'"

*See also Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("prison administrators are to take all necessary

steps to ensure the safety of not only the prison staff and administrative personnel, but also

visitors.").  The language from *Whitley* and *Hudson* upon which relies, however, while stating general

principles, was dicta as these Supreme Court decisions addressed factual circumstances that had

nothing to do with visitors' safety. *Whitley* considered the appropriate Eighth Amendment standard

for prison officials quelling a prison riot, *Whitley*, 475 U.S. at 320, while *Hudson* addressed whether

prisoners have a reasonable expectation of privacy in their cells for purposes of the Fourth

Amendment. *Hudson*, 468 U.S. at 526.

Federal appellate courts agree that "decisions related to hiring, training, and supervision of

employees are inherently a discretionary function." *See Brown v. United States*,   2018 WL 741731, at

*4, n. 4 (E.D. Pa. Feb. 7, 2018) (collecting cases from the United States Courts of Appeals for the

First, Fifth, Sixth, Eighth, Ninth, Tenth, and D.C. Circuits), *aff'd*, 823 Fed. Appx. 97 (3d Cir. 2020).

"[N]umerous trial courts within the Third Circuit have reached the same conclusion." *Id.* These

decisions recognize that "employment and termination decisions are, as a class, the kind of matters

requiring consideration of a wide range of policy factors, including 'budgetary constraints, public

perception, economic conditions, individual backgrounds, office diversity, experience and employer

intuition.'" *Id.* (quoting *Sydnes v. United States*, 523 F.3d 1179, 1186 (10th Cir. 2008); *Burkhart v. Wash.

Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997)).

The discretionary function analysis in this case thus turns on whether Mrs. Bohnenkamp

"can identify statutes and/or regulations that limited the discretion of the [BOP] in its hiring,

retention, or supervision decisions of employees such as" Wusterbarth. *Brown*, 2018 WL 741731, at

*5. She directs the Court to none. Instead, Mrs. Bohnenkamp argues in her brief that on the facts

presented here, Warden Trate's decision to retain Wusterbarth as an employee should not be

considered discretionary when he allegedly knew or was on notice of Wusterbarth's questionable

background and inappropriate conduct towards other women, including Wusterbarth's keeping of

an office calendar to track when certain women were scheduled to be present at the prison's visitors'

center. ECF 49, p. 8-9. However, the discretionary function exception expressly applies "whether

or not the discretion involved be abused."  28 U.S.C. § 2680(a); *see Merando v. United States*, 517 F.3d 160, 167 (3d Cir. 2008).  Thus, even assuming a reasonable supervisor would have declined to hire or would have removed, disciplined, or terminated Wusterbarth from his position, the discretionary function exception shields the United States from Mrs. Bohnenkamp's negligent hiring and supervision claim.   *See Mokhtarian v. Fasci*, 481 F. Supp. 3d 503 (D. Md. 2020) (decision to retain civilian employee's co-worker at naval installation after he took photographs of another female co-worker without her consent was within Navy's discretion, and thus discretionary function exception to waiver of sovereign immunity applied to employee's negligent retention); *Chapman v. United States*, 480 F.Supp. 3d 601 (M.D. Pa. 2020) (holding that the discretionary functions exception shielded the Government from a claim that the United States Parcel Service negligently hired and supervised one of its mail delivery drivers who collided with the plaintiff's motorcycle).

The foregoing application of the discretionary function exception is limited, however, to Mrs. Bohnenkamp's negligent hiring and supervision claim.  While the discretionary function exception bars that claim, it does not preclude her *respondeat superior* claim against the United States to the extent the latter is based on Wusterbarth's tortious conduct committed within the scope of his employment and outside the scope to the intentional tort exception.  "Federal employees such as correctional officers employed by the Bureau of Prisons simply 'do not have discretion to violate mandatory requirements' or constitutional rights."  *Wiggins*, 2017 WL 5900572, at *12 (quoting *Koch v. United States*, 814 F. Supp. 1221, 1227 (M.D. Pa. 1993)).  Prohibitions of sexual and other forms of harassment perpetrated against visitors to federal prisons and other facilities fall squarely within the mandatory requirements concerning which employees have no discretion to violate.

V.      Conclusion

Based upon the current record, this Court has subject matter jurisdiction under the Federal Tort Claims Act of Plaintiff Rachel Bohnenkamp's intentional infliction of emotional distress claim and invasion of privacy/intrusion upon seclusion claim to the extent detailed in this Opinion. Accordingly, the Government's Motion to Dismiss the Amended Complaint will be DENIED as to those claims.  However, the Government's limited waiver of sovereign immunity does not extend to Plaintiff's claims rooted in misrepresentation or deceit.  Nor does it extend to her negligent hiring and supervision claims.  The Government's motion will be GRANTED as to the latter claims.

ORDER

The United States' Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) [ECF No. 39] is GRANTED in part and DENIED in part.  The United States' motion is GRANTED as to Plaintiff Rachel Bohnenkamp's claims rooted in misrepresentation and deceit and her negligent hiring and supervision claims.   The United States' motion is DENIED as to Plaintiff's intentional infliction of emotional distress claim and intrusion upon seclusion/invasion of privacy claim as detailed in the foregoing Opinion.

Dated: April 23, 2021

RICHARD A. LANZILLO
United States Magistrate Judge