IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | | |
|---|---|---|
| RACHEL BOHNENKAMP, | ) | |
| | ) | |
| Plaintiff | ) | 1:19-CV-00115-RAL |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | CHIEF UNITED STATES |
| JAMES WHISTERBARTH,[1] | ) | MAGISTRATE JUDGE |
| CORRECTIONAL OFFICER; AND | ) | |
| UNITED STATES OF AMERICA, | ) | MEMORANDUM OPINION, FINDINGS OF |
| | ) | FACT, AND CONCLUSIONS OF LAW |
| Defendants | ) | IN RE: ECF NO. 97 |
| | ) | |
| | ) | |

I.      Introduction

        Two related requests for relief are currently pending before the Court.  Defendant United

States of America ("the Government") has moved for summary judgment on Plaintiff Rachel

Bohnenkamp's ("Bohnenkamp") claim against it under the Federal Tort Claims Act ("FTCA"),

28 U.S.C. § 1346(b); 28 U.S.C. § 2671, et seq. *See* ECF No. 97.  The Government argues that

the conduct of its former employee, co-defendant James Wusterbarth ("Wusterbarth"), upon

which Bohnenkamp bases her FTCA claim was outside the scope of his employment with the

Federal Bureau of Prisons ("BOP") and thus beyond the scope of the FTCA.  Conversely,

Wusterbarth has asked this Court to certify that he was acting within the scope of his

employment pursuant to 28 U.S.C. § 2679(d)(3) and require that the Government substitute itself

---

[1] Plaintiff's original complaint identified this defendant's last name as "Whisterbarth." The parties later agreed that the correct spelling is "Wusterbarth," which the Court will use throughout the body of this Opinion.

for him as the sole defendant to Bohnenkamp's FTCA claim.  For the reasons explained herein, the Court will deny Wusterbarth's request and grant the Government's motion.[2]

II.    Background and Procedural History

Bohnenkamp is the spouse of Christopher Bohnenkamp, an individual previously incarcerated at the Federal Correctional Institution at McKean, Pennsylvania ("FCI-McKean"). Wusterbarth was employed as a correctional officer at FCI-McKean from approximately 2016 until late February, 2019.  Bohnenkamp alleges that during his employment, Wusterbarth made advances towards her and, when rebuffed, engaged in threatening and manipulative conduct towards her and her family.  She asserts that at least some of this conduct occurred within the scope of his employment with the BOP.  Based on this alleged conduct, Bohnenkamp's Amended Complaint asserts claims against the Government and Wusterbarth under the FTCA (Count I) and against Wusterbarth under the state common law theories of intentional infliction of emotional distress and invasion of privacy (Counts II and III).

Shortly after the commencement of this action, Wusterbarth requested that the Government defend and indemnify him.  *See* ECF No. 35.  Instead, the Government moved to dismiss the claims against it for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  *See* ECF No. 39.  It argued that Bohnenkamp could not maintain an FTCA claim because Wusterbarth's alleged conduct fell outside the scope of his employment and Bohnenkamp had failed to exhaust her administrative remedies as to the negligent hiring and supervision theory of her FTCA claim.  In support of its motion, the Government submitted a

---

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.  *See* ECF Nos. 7, and 53.

"Certification Denying Scope of Employment," executed by the United States Attorney. *See* ECF No. 40-1. The Court granted the Government's motion to dismiss to the extent Bohnenkamp's claims against the Government were rooted in theories of misrepresentation and deceit and negligent hiring and supervision. *See* ECF No. 69 (reported as *Bohnenkamp v. Wusterbarth*, 2021 WL 1600477 (W.D. Pa. April 23, 2021)). In all other respects, the Court denied the motion. The Court concluded that the record was not sufficiently developed to determine whether Wusterbarth's conduct fell within the scope of his employment. *See id.*, pp. 11-13.

Following discovery focusing on the issue of Wusterbarth's scope of employment, the Government filed its pending motion for summary judgment, concise statement of material facts with appendix of exhibits, and supporting brief. *See, generally*, ECF Nos. 97-100. It argues that the record developed during discovery conclusively demonstrates that Wusterbarth's conduct fell outside the scope of his employment with the BOP. Bohnenkamp and Wusterbarth have filed separate briefs in opposition to the motion and responsive concise statements of material fact. *See* ECF Nos. 106-107 (Bohnenkamp); ECF Nos. 108-109 (Wusterbarth). Bohnenkamp maintains that genuine issues of material fact preclude the entry of summary judgment. *See* ECF No. 106. Wusterbarth joins in Bohnenkamp's response and further argues that he is immune from suit and that the Government should be substituted for him as the sole defendant. *See* ECF No. 108.

On September 14, 2022, the Court conducted an evidentiary hearing on Wusterbarth's request that the Government be substituted as the sole defendant in this action. *See* ECF. No. 124. Following the hearing, the Parties submitted proposed findings of fact and conclusions of

law.[3]  *See* ECF Nos. 132, 133, 134.  Wusterbarth's request for the Government's substitution as

defendant and the Government's motion for summary judgment are now ripe for disposition.

III.   Wusterbarth's Request for Substitution

   A.  The FTCA, the Westfall Act, and the Government's Refusal to Certify Wusterbarth's
       Scope of Employment

   Before addressing the Government's motion for summary judgment, the Court will first

consider Wusterbarth's request that the Court certify his conduct as falling within the scope of

his employment.  *See Melo v. Hafer*, 13 F.3d 746, 747 (3d Cir. 1994) ("*Melo II*") (quotation

marks and internal citation omitted) (holding that "Congress intended federal employees to have

a right to a court determination of all aspects of the immunity issue prior to trial").  This request

is governed by the Federal Employees Liability Reform and Tort Compensation Act of 1988,

also known as the Westfall Act, 28 U.S.C. § 2679 ("Westfall Act"), which modifies the FTCA as

it relates to the immunity of federal employees acting within the scope of their office or

employment.  *Id.*

   The FTCA is a limited waiver of the Government's sovereign immunity for certain torts

committed by its employees.  *See Sheridan v. United States*, 487 U.S. 392, 398 (1988); 28 U.S.C.

§ 1346(b).  To fall within this limited waiver, a plaintiff's claim must satisfy six threshold

requirements listed in § 1346(b)(1).  The claim must be "[1] against the United States, [2] for

money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by

the negligent or wrongful act or omission of any employee of the Government [5] while acting

within the scope of his office or employment, [6] under circumstances where the United States, if

---

[3] Defendant Wusterbarth's submission is not in the form of proposed findings of fact and conclusions of law. Instead, he has filed a brief in support of his argument that he was acting within the scope of his employment. *See* ECF No. 134.

a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *FDIC v. Meyer*, 510 U.S. 471, 477 (1994) (alterations in original) (quoting 28 U.S.C. § 1346(b)(1)).

In 1988, the U.S. Supreme Court determined that federal employees were immune from state tort liability only if it was shown both that they were acting within the scope of their employment *and* that their conduct was discretionary in nature. *See Westfall v. Erwin*, 484 U.S. 292, 300 (1988). Congress enacted the Westfall Act shortly after the *Westfall* decision to eliminate the discretionary function requirement for employee immunity. *See* 28 U.S.C. § 2679(d) (1988); *see also Osborn v. Haley*, 549 U.S. 225, 229-30 (2007); *Melo II*, 13 F.3d at 739. The Act accomplishes this by providing that the FTCA "supplies the only remedy against the United States for such claims, and that so long as any employee whose act or omissions gave rise to the plaintiff's claim was 'acting within the scope of his [or her] office or employment,' any other 'civil action or proceeding for money damages ... against the employee ... is precluded.'" *Id.*

The Westfall Act also permits the Attorney General of the United States, or his or her designee (here, the United States Attorney for this judicial district), to certify that the federal employee was acting within the scope of his or her employment. *Id.*, § 2679(d)(2); 28 C.F.R. §15.3(a) (2002).[4] Upon such certification, the Government is substituted as defendant in place of

---

[4] The Act mandates that, "upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment... any civil action or proceeding commenced upon such a claim in a State court shall be removed ... to the district court of the United States for the district and ... shall be deemed to be an action or proceeding brought against the United States." 28 U.S.C. § 2679(d)(2). The Westfall Act then instructs that such a certification "shall conclusively establish scope of office or employment for purposes of removal." *Id.* This provision provides no guidance in this case, however, because it does not address a situation where the Attorney General declines to certify that the employee was acting within his or her scope of employment, and it addresses the effect a positive certification only as it relates to a case removed from state court.

the employee, and the action is thereafter governed by the FTCA.  In this case, the United States

Attorney refused to certify that Wusterbarth's actions were within the scope of his employment.

*See* ECF No. 40-1, p. 1; *see also* § 26769(d)(3).  Where the Attorney General or his designee

refuses to certify, "the [federal] employee may at any time before trial petition the court to find

and certify that the employee was acting within the scope of his office or employment." 28

U.S.C. § 2679(d)(3).[5]  *See also Ehlenbach v. United States,* 2009 WL 2885150, at *4 (W.D. Pa.

Sep. 8, 2009).  If the Court agrees, it substitutes the United States as the sole defendant and

dismisses the defendant employee.  *Id.*; *see also Ross v. Merlak*, 2022 WL 2648930, at *2 (N.D.

Ohio July 8, 2022).  The Court's first inquiry in this action is to determine whether Wusterbarth

has petitioned the Court to make such a finding.[6]

> B.  The Court construes Wusterbarth's motion for the appointment of counsel as a motion
> for certification under the Westfall Act.

A request for certification under § 2679(d)(3) is typically presented as a "motion to

substitute" or "motion for certification."  *See, e.g., Rodriguez v. Sarabyn*, 129 F.3d 760, 765 (5th

Cir. 1997) (noting that "[t]he district court found that Solomon was an independent contractor

and not a federal employee and therefore denied his motion for certification under the Westfall

Act.").  *See also Mitchell v. Bailey,* 982 F.3d 937, 941 (5th Cir. 2020), *as revised* (Dec. 30, 2020)

---

[5] This provision specifically states: "In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment.  Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(3).

[6] Bohnenkamp could not have done so because she is not a federal employee.  *See, e.g., Anderson v. United States,* 2013 WL 8149332, at *14 (D.S.C. Oct. 15, 2013) (noting that the procedures set forth in 28 U.S.C. § 2679(d)(3) are not applicable when a non-employee plaintiff challenges the Government's position that its employee/tortfeasor was acting outside the scope of employment), *report and recommendation adopted in relevant part, rejected in other part*, 2014 WL 1268589 (D.S.C. Mar. 26, 2014).

(citing *Moncrief v. Moncrief*, 1998 WL 567988, at *3, *5 (N.D. Tex. Aug. 3, 1998) (collecting

cases characterizing the certification process as a motion to substitute).  Here, however,

Wusterbarth did not file a specific motion seeking substitution or certification under the Act.

Instead, while initially proceeding *pro se*, he filed a motion seeking the appointment of the

United States Attorney's Office as his counsel, stating:

> This motion is a Pro Se request for the assignment of government
> counsel. This is required due to the fact that everything which
> transpired between inmate Bohnenkamp, his wife, and myself were
> well within the scope of my employment, which is easy to verify
> (and the Bohenkamps themselves even stated).  I can easily prove
> this 'scope of employment' relevance with an assigned AUSA if
> the complaint goes to trial.  Without an AUSA, it would be nearly
> impossible to prove that everything I did was 100% within the
> scope of my employment.

ECF No. 37, pp. 1-2.  Throughout this litigation, Wusterbarth also has consistently asserted that

he acted within the scope of his employment and is entitled to immunity as a result.  Construing

Wusterbarth's *pro se* motion for appointment of counsel liberally, and considering his consistent

assertion of immunity in this action, the Court finds that he has sufficiently moved for

certification under 28 U.S.C. § 2679(d)(3).[7]

      C.   For purposes of his request for certification, Wusterbarth bears the burden of proof
           on the scope of employment question.

     Having determined that Wusterbarth adequately moved for certification under

§ 2679(d)(3), the Court next must determine its standard of review and who bears the burden of

proof.  The Court of Appeals for the Third Circuit has held that the Attorney General's

---

[7] The Court is obliged to treat the filings of *pro se* litigants liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citation omitted).  The Court also noted at the hearing that Wusterbarth's prior submissions would be construed as a challenge to the Government's refusal to certify his conduct as within the scope of his employment and no objection was heard from the Government or Bohnenkamp. *See* ECF No. 128, pp. 4-5.

certification that an employee was acting within the scope of his or her authority, while not conclusive, "is *prima facie* evidence that the employee's challenged conduct occurred within the scope of employment...." *Schrob v. Catterson*, 967 F.2d 929, 936 (3d Cir.1992). Thus, a positive certification by the Attorney General places the burden upon a plaintiff challenging the certification to come "forward with specific facts rebutting it." *Id.* Neither the Supreme Court nor the Court of Appeals for the Third Circuit has addressed the burden of production or proof where, as here, the Attorney General has refused to certify scope of employment and the employee has petitioned for certification. But the weight of other authority supports that the district court "reviews the Attorney General's certification denial *de novo*, and the party seeking review of the denial bears the burden of presenting evidence and disproving the Attorney General's decision by a preponderance of the evidence."[8] *Colbert v. United States*, 2012 WL 12906168, at *8 (M.D. Fla. Nov. 21, 2012) (*citing Richman v. Straley*, 48 F. 3d 1139, 1145 (10th Cir. 1995); *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993)); *see also Lacey-Echols ex rel. Lacey v. Murphy*, 2003 WL 23571269, at *6 (D.N.J. Dec. 17, 2003) (holding that the party "seeking review bears the burden of rebutting or disproving, by a preponderance of the evidence, the Attorney General's decision to grant or deny the scope of employment certification"). It is also clear that the question of "scope of employment" in the posture of an FTCA case is for the court to decide. *See Zankel v. United States*, 2008 WL 828032, at *1 (W.D. Pa. Mar. 25, 2008). Of course, if the Court determines that Wusterbarth acted outside the scope of his employment and

---

[8] The Westfall Act itself does not directly speak to the issue. The Act mandates that, "upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment... any civil action or proceeding commenced upon such a claim in a State court shall be removed ... to the district court of the United States for the district and ... shall be deemed to be an action or proceeding brought against the United States" and that such a certification "shall conclusively establish scope of office or employment for purposes of removal." 28 U.S.C. § 2679(d)(2). This provision provides no guidance in this case because it does not address a situation where the Attorney General declines to certify that the employee was acting within his or her scope of employment, and it addresses the effect of a positive certification only as it relates to a case removed from state court.

is not immune on Bohnenkamp's state law claims, she will have the right to pursue those claims before a jury in an appropriate forum. *Melo II*, 13 F.3d at 747, n.7.

> D. Findings of Fact and Conclusions of Law Regarding Wusterbarth's Request for Certification of Scope of Employment

The Court finds the following facts regarding Wusterbarth's requests that the Court certify that he was acting within the scope of his employment and substitute the Government as the sole defendant in this action:

1.     Plaintiff Rachel Bohnenkamp ("Bohnenkamp") is the wife of Christopher Bohnenkamp, who, during all time relevant to this action, was an inmate in the custody of the Federal Bureau of Prisons ("BOP") at the Federal Correctional Institution at McKean, Pennsylvania ("FCI-McKean"), located at 6975 PA-59, Lewis Run, Pennsylvania 16738. *See* ECF No. 30, ¶ 16.

2.     Defendant United States (the "Government") operates FCI McKean through the BOP.

3.     Defendant James Wusterbarth ("Wusterbarth") is a former senior correctional officer employed by the BOP at FCI McKean from approximately late 2015 or early 2016 until he resigned his employment effective February 20, 2019.  ECF No. 130, p. 11; ECF No. 100-1, p. 4 (Wusterbarth Dep.); ECF No. 100-9 (resignation letter).

4.     On August 18, 2018, Bohnenkamp and her two sons visited Christopher Bohnenkamp at the Visiting Room at FCI McKean.  ECF No. 100-2, p. 1; *see also* ECF No. 30, at ¶ 16.  Due to the number of visitors, they used the prison's larger "family visiting room." *See* ECF No. 30, at ¶ 16-18.

5.      Wusterbarth was assigned to the Visiting Room post on August 18, 2018.  ECF No. 100-3, p. 4; *see also* ECF No. 30, at ¶ 20.

6.      At some point during his shift that day, Wusterbarth spoke to Bohnenkamp and obtained her cell phone number.  Bohnenkamp states that Wusterbarth asked her to identify the last two digits of her phone number.  *See* ECF No. 30, at ¶ 22; ECF No. 100-4, p. 5 (police report).

7.      Wusterbarth states that Bohnenkamp offered her entire number to him.  ECF No. 100-1, p. 17.

8.      Wusterbarth called Bohnenkamp's cell phone twice on August 18, 2018, once at 4:03 p.m. and again at 7:02 p.m. ECF No. 100-4, p. 7 (Plaintiff's cell phone records); ECF No. 100-1, p. 37.

9.      Wusterbarth made both phone calls to Bohnenkamp from his personal cell phone, while he was outside of the prison facility, and after his shift at FCI McKean had ended.  ECF No. 130, pp. 29- 30; ECF No. 100-4, p. 7; ECF No. 100-1, p. 13.

10.      According to Bohnenkamp, Wusterbarth called her on August 18, 2018, initially indicating that he needed to meet her to discuss her husband, but then revealing that he wanted to see her because she was beautiful, and he was attracted to her.  *See* ECF No. 30, at ¶¶ 28-30; ECF No. 130, p. 76; ECF No. 100-4, p. 5 (police report).

11.      According to Bohnenkamp, Wusterbarth also tried to get her to meet him at the hotel where she was staying, and when she refused, he told her that she could never tell anyone about his advances or else her husband would be in serious danger.  *See* ECF No. 30, at ¶¶ 32-35; ECF No. 100-4, p. 5 (police report).

12.     Wusterbarth testified that he contacted Bohnenkamp as part of an investigation of possible contraband being brought into the prison by her and her inmate husband.  ECF No. 130, p. 25, lines16-20; p. 33, lines 23-25; p. 34, lines 6-8.

13.     Wusterbarth's duties as a correctional officer at FCI McKean included preventing contraband that may be introduced into the institution.  ECF No. 130, pp. 87-88; ECF No. 99, ¶¶ 41-47, 50, 52, 54, 56.

14.     Contraband is any type of material that is prohibited from within the prison or from being brought into the prison.  ECF No. 130, p. 91.  Examples of contraband include drugs, prohibited paperwork, and food. Id., pp. 91-92; 113.

15.     When an officer observes prohibited conduct such as passing papers in the visiting room, the officer may approach the inmate and the visitor(s) to advise that such conduct was observed, give a warning to stop the conduct, examine and take possession of the papers until the end of the visit or to turn them over to the Operations Lieutenant, inquire as to an explanation for passing papers, or terminate the visit, and the officer should document the incident in the logbook.  ECF No. 130, pp. 91-94, 113-116; *see also* ECF No. 99, ¶¶ 45-46, 50, 52, 54, 56.

16.     A correctional officer's responsibilities with respect to determining whether contraband is being passed between an inmate and a visitor in the visiting room do not extend to: (i) that officer undertaking or continuing an investigation; (ii) beyond the confines of the prison; (iii) outside of regularly scheduled work hours; or (iv) through direct contact with the inmates' family members or associates.  ECF No. 130, pp. 101-105,112-113, 132-133; *see also* ECF No. 99, ¶¶ 47, 58-59.

17.     No FCI McKean official ordered, instructed, or otherwise authorized Wusterbarth to unilaterally carry out an "investigation" beyond his work hours or outside of the prison based on any suspicion of contraband consisting of a "pile of papers."  ECF No. 130, pp. 41, 44, 104-105; *see also* ECF No. 99, ¶ 48.

18.     Despite having authority to do so while on duty in the visiting room, Wusterbarth did not inspect any papers allegedly possessed or exchanged by Bohnenkamp and her husband.  ECF No. 130, p. 44; *see also* ECF No. 99, ¶ 53.

19.     Wusterbarth did not document or otherwise memorialize what he purportedly observed.  ECF No. 99, ¶ 55 (Visitor Logbook revealing no record of the Bohnenkamp and inmate Bohnenkamp passing alleged paper contraband).

20.     Wusterbarth testified that he was "unable" to inspect the papers or reach a backup officer by phone during his shift.  ECF No. 130, p. 44; *see also* ECF No. 99, ¶ 53.  The Court rejects this explanation as not credible.

21.     Wusterbarth testified that his "planned route of investigation" was to contact Bohnenkamp after work hours on August 18, 2018, to conduct an investigatory interview.   ECF No. 130, pp. 48-49.

22.     Wusterbarth testified that he did not believe the circumstances required him to inform a supervisor about pursuing his own investigation; that "it did not seem, in [his] judgment, to warrant the level of involving a Lieutenant." ECF No. 130, pp. 47-49.

23.     The Position Description for a Senior Correctional Officer in effect during Wusterbarth's employment specified, among other duties, the following:

- Supervision and instruction of inmates regarding proper sanitation, personal hygiene and work habits;
- The maintenance of discipline of the inmates;

- Escorting inmates to various cities or states for court appearances; and

- Enforcing criminal statutes and/or judicial sanctions, including investigative, arrest and/or detention authority on institutional property.

ECF No. 100-10, pp. 3-5.

24.     Lieutenant Dennis Lathrop was the Special Investigative Services ("SIS") Lieutenant at FCI McKean during the time relevant to this action.  His duties included supervision of custody staff, including corrections officers.  ECF No. 130, p. 85.

25. Lieutenant Lathrop described the general duties of a corrections officer as follows:

> The general – the general duty of a corrections officer is to interact with inmates and staff alike.  The supervision of inmates; ensuring that they perform the duties that they're assigned, the upkeep of the institution as well as the housing units that they live in.  The safety and security of the institution; maintaining the safety and security of the institution to ensure that an inmate doesn't attempt to escape or succeed in an escape.

ECF No. 130, p. 88.

26.     The only mention of visitation responsibilities in the Position Description is that the officer "[m]ust be knowledgeable enough to work . . . in more responsible positions such as … Visiting Room."  ECF No. 100-10, p. 5.

27.     The BOP's Standards of Employee Conduct "clearly state that at no time is an employee of the Bureau of Prisons to have contact or a personal relationship with any inmate, former inmate, family members, or friends of inmates at any time."  ECF No. 100-6, pp. 35-37; see also ECF No. 100-16, p. 6 (Program Statement 3420.11, Standards of Employee Conduct).

28.     Staff are trained on the Standards of Employee conduct, and it is "well known" among staff at FCI McKean that "there is to be no personal relationships formed with family members of inmates."  ECF No. 100-6, p. 6.

29.    Wusterbarth acknowledged that he received the Standards of Employee Conduct, was responsible for familiarizing himself with their contents, and had the responsibility to conduct himself accordingly.  *See* ECF No. 100-17, p. 3.

30.    BOP Program Statement 3420.11, entitled "Standards of Employee Conduct," prohibits BOP employees from:

> Allow[ing] themselves to show partiality toward, or become emotionally, physically, sexually, or financially involved with inmates, former inmates, or persons known (or who should have been known based on circumstances) to the employee as a family member or close friend of inmates or former inmates.

ECF No. 100-16, p. 6.

31.    The Program Statement also forbids a BOP employee from offering or giving "an inmate or former inmate, or any member of his/her family … any article, favor, or service that is not authorized in the performance of the employee's duties." ECF No. 100-16, p. 7.

32.    Any BOP employee who has contact with an inmate's family "must report the contact in writing to the CEO as soon as practicable.  (This includes, but is not limited to, telephone calls or written communications with such persons outside the normal scope of employment.)." ECF No. 100-16, p. 8.

33.    Even those BOP employees who are "exempted program officials" must "obtain prior approval to communicate with" an inmate's family member and all such communication "**must occur from an institutional setting.**" ECF No. 100-16, p. 8 (emphasis in original).

34.    Wusterbarth testified that his "investigation" relating to Bohnenkamp's activities was comparable to one conducted by another corrections officer at FCI-McKean who received a commendation for his conduct.  *See* ECF No. 130, pp. 17-19. The actions of the other officer and Wusterbarth are not comparable.  Although the other officers shift had ended, he was still

14

properly present on prison property when he observed an individual attempting to enter prison property through a fence and immediately intervened. *Id.*

35.     Based on the entirety of Wusterbarth's testimony and his demeanor during the hearing on September 14, 2022, as well as the testimony of Lieutenant Lathrop and the documentary evidence of record, the Court rejects as not credible Wusterbarth's testimony that he contacted Bohnenkamp on August 18, 2018, as part of an investigation of her suspected introduction of contraband into the prison.  Wusterbarth's testimony was often evasive and contradictory, and wholly unsupported by other documentary or testimonial evidence.

36.     Wusterbarth's testimony that he requested and obtained Bohnenkamp's telephone number and contacted Bohnenkamp after his shift ended on August 18, 2018, as part of a prison related investigation is not credible.

37.     Wusterbarth's conduct on August 18, 2018, relative to Bohnenkamp was contrary to his Position Description and the policies and code of conduct of the BOP.

38.     Wusterbarth's conduct on August 18, 2018, relative to Bohnenkamp did not serve or further the interests of the BOP.

39.     On August 19, 2018, Bohnenkamp returned to the prison to visit her husband, and Wusterbarth was again working the Visiting Room Post.  ECF No. 100-3, p. 4.  According to Bohnenkamp, Wusterbarth threatened her with a "motion[] to keep silent."  *See* ECF No. 30, at ¶¶ 36-37.

40.     Wusterbarth denies "motioning [towards her] in any way."  ECF No. 100-1, 0. 28.

41.     According to Bohnenkamp, on November 28, 2018, her son received a phone call from Wusterbarth, who informed him that there had been an altercation at the prison and that his

father had subsequently died. *See* ECF No. 30, at ¶¶ 39-41. Wusterbarth denies making this phone call. ECF No. 100-1, p. 28.

42.    In March 2019, shortly after Bohnenkamp filed a police report concerning Wusterbarth's conduct towards her, she received a series of threatening or intimidating text messages from a number she did not recognize, but which she believed originated from Wusterbarth. ECF No. 100-4, p. 15 (police report). *See also* ECF No. 30, at ¶¶ 46- 51; ECF No. 100-4, p. 6 (police report). These texts were sent and received after Wusterbarth had resigned his position and ceased to be an employee of the BOP. *Id.*

43.    Inmate Bohnenkamp also received a postcard in March 2019, made to look as though it was sent by his oldest son, Christopher. ECF No. 100-4, p. 32. Bohnenkamp believes this postcard was sent to her family as a threat. *See* also ECF No. 30, at ¶¶ 54-56. This postcard was sent and received after Wusterbarth had resigned his position and ceased to be an employee of the BOP. *Id.*

44.    None of the conduct allegedly committed by Wusterbarth and described in paragraphs 39 through 43 above would have been permissible under BOP policies and none would have served or advanced the interests of the BOP.

45.    As SIS Lieutenant, Lt. Lathrop personally conducted the fact-finding portion of staff investigations at FCI McKean, including the investigation into Wusterbarth. ECF No. 100-6, pp. 9-10.

46.    On October 31, 2018, the Bradford Police Department received information that Wusterbarth had sexually assaulted an anonymous female, which information prompted the opening of an investigation into the alleged sexual assault. ECF No. 130, p. 63-64.

47.     The alleged victim of the sexual assault was later identified as another woman who first encountered Wusterbarth when she was visiting an inmate at FCI McKean. ECF No. 130, pp. 63-65.

48.     This individual reported interaction "with a staff member who was very inappropriate with her in a sexual manner." ECF No. 100-6, pp. 15-16, 22.

49.     The Acting Warden instructed Lt. Dennis Lathrop, as the SIS Lieutenant, to report to the Bradford Police Department to gather information, stating that "an investigation needed to be ordered" because "the accusations . . . made against Mr. Wusterbarth [were] not permitted for staff to conduct." ECF No. 100-6, p. 15.

50.     While the Bradford Police Department and Lt. Lathrop were still investigating the other woman's report of improper conduct against Wusterbarth, Wusterbarth sent a resignation letter to Captain Rhodes at FCI McKean dated February 14, 2019. ECF No. 100-9 (resignation letter).

51.     The letter stated that Wusterbarth's resignation was for "personal reasons," effective February 20, 2019, and "contingent on the Agreement from DOJ/BOP/FCI McKean that any currently active or pending work-related investigations, inquiries, or actions involving me will cease and either be closed at the time of my departure or at least put on hold until such time that I potentially seek re-employment with the Federal Bureau of Prisons in the future." ECF No. 100-9.

52.     At the time of his resignation, Wusterbarth was aware of Lt. Lathrop's investigation into his conduct. *See* ECF No. 100-1, p. 45 ("Q: As of the time you drafted that [resignation letter,] you were certainly aware of the Bureau's investigation into your conduct. Correct? A: Yes.").

53.     At the time of his resignation, Wusterbarth was also aware of the Bradford Police Department's investigation. ECF No. 100-8, p. 3 ("Wusterbarth and Attorney Logue . . . advised this Officer that Wusterbarth would be inclined to walk away from his job and resign if he could not be charged.").

54.     Lt. Lathrop's investigation primarily involved the complaint by the other female visitor to the prison because Bohnenkamp made her report to the Bradford Police Department in March 2019, after Wusterbarth had already resigned from FCI McKean. ECF No. 100-6, p. 50.

E.    Conclusions of Law Regarding Wusterbarth's Request for Certification of Scope of Employment

The Court makes the following conclusions of law regarding Wusterbarth's requests that the Court certify that he was acting within the scope of his employment and substitute the Government as the sole defendant in this action:

1.     Under the FTCA, "the Government's liability is to be determined by the application of ... the law of the place where the act or omission occurred ...'" *Smith v. United States*, 507 U.S. 197, 202 n. 3 (1993) (quoting *Richards v. United States*, 369 U.S. 1, 9 (1962)).

2.     Because the alleged conduct upon which Bohnenkamp's claims are based occurred in Pennsylvania, the law of Pennsylvania governs the Court's determination whether Wusterbarth was acting within the scope of his employment.

3.     In Pennsylvania, courts apply the Restatement (Second) of Agency's Section 228 to determine whether conduct is within the scope of employment. *Matsko v. United States*, 372 F.3d 556, 559 (3d Cir. 2004) (citing § 228; *Fitzgerald v. McCutcheon*, 270 Pa. Super. 102, 410 A.2d 1270, 1272 (1979)).

4.     Under Section 228, "conduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the

18

authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master...." *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000) (quoting Restatement (Second) Agency § 228 (1958)). *See also Zankel v. United States,* 2008 WL 828032, at *7 (W.D. Pa. Mar. 25, 2008) (citation omitted)*; Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1271 (Pa. Super. Ct. 1979).

5.      In determining whether an employee acted within the scope of his or her employment, the court does "not look to a plaintiff's claims," but instead, "to the employee's conduct at the time of the incident out of which the claim arose." *Mendez Vallejo v. United States,* 2021 WL 2155380, at *5 (D.N.J. May 27, 2021); *see also* 28 U.S.C. § 2679(d)(1).  Thus, the Court examines Wusterbarth's conduct—not its allegedly tortious nature—in determining whether he acted within the scope of his employment. [9]

6.      Wusterbarth's conduct on August 18, 2018, relative to Bohnenkamp, including his request for her telephone number and his twice contacting her using his private cell phone after his shift had concluded, was not the kind of conduct Wusterbarth was employed to perform.

7.      Wusterbarth's alleged conduct on and after August 19, 2018, as set forth in paragraphs 39 through 43 of this Court's Findings of Fact, was not the kind of conduct Wusterbarth was employed to perform.

8.      Wusterbarth's conduct on August 18, 2018, relative to Bohnenkamp, including his twice contacting her using his private cell phone after his shift had concluded, did not occur substantially within the authorized time and space limits.

---

[9] To do otherwise, one Court has explained, would render the Westfall Act "practically inconsequential, because intentional torts and negligence rarely, if ever, (1) constitute an employee's typical duties; or (2) serve to benefit the Government as employer." *Borawski v. Henderson*, 265 F.Supp.2d 475, 482 (D.N.J. June 10, 2023) (citing 28 U.S.C. § 2679 (d)(a)).

9.      Wusterbarth's alleged conduct on and after August 19, 2018, as set forth in paragraphs 39 through 43 of this Court's Findings of Fact, to the extent it occurred, did not occur substantially within the authorized time and space limits.

10.     Wusterbarth's conduct on August 18, 2018, relative to Bohnenkamp, including his request for her telephone number and his twice contacting her using his private cell phone after his shift had concluded, was not actuated, in whole or in part, by a purpose to serve the BOP.

11.     Wusterbarth's alleged conduct on and after August 19, 2018, as set forth in paragraphs 39 through 43 of this Court's Findings of Fact, to the extent it occurred, was not actuated, in whole or in part, by a purpose to serve the BOP.

12.     Wusterbarth was not acting within the scope of his employment when he engaged in any of the conduct at issue in this action.

13.     Wusterbarth is not entitled to certification that he was acting within the scope of his employment pursuant to 28 U.S.C. § 2679(d)(3).

14.     Wusterbarth is not entitled to immunity under the Westfall Act or substation of the Government as the sole defendant in this action.

VI.    The Government's Motion for Summary Judgment

Having determined that Wusterbarth was not acting within the scope of his employment for purposes of his request for certification and substitution of the Government, the Court now turns to the Government's motion for summary judgment on Bohnenkamp's FTCA claim. *See* ECF No. 97.  In resolving this motion, the Court must first determine whether its findings of fact and conclusions of law on the issue of scope of employment are binding not only against Wusterbarth, the employee, but Bohnenkamp, the plaintiff.  Case law appears to answer this

20

question in the affirmative.  The Court of Appeals for the Third Circuit has instructed that "[i]f

the facts can be determined without an evidentiary hearing," the court may determine the scope

of employment issue "on a pretrial motion to substitute or to set aside the substitution based on

the certification, pleadings, documentary evidence, and affidavits..." *Schrob*, 967 F.2d at 936.

"On the other hand," the Court explained, "if there is a genuine issue of fact material to the scope

of employment question, the district court should permit discovery and conduct a hearing, if

necessary." *Id.*  But, the Court added, "the district court should ensure that both the discovery

and the hearing are circumscribed as narrowly as possible, although these are matters within its

discretion." *Id.*; *see also Aliota v. Graham*, 984 F.2d 1350, 1358 (3d Cir. 1993).

It is also clear that the traditional summary judgment standard does not apply when the

court decides an employee's request for certification. *See, e.g., Dolan v. United States*, 514 F.3d

587, 593 (6th Cir. 2008) ("...although the accuracy of the certification is reviewable by the

district court in which it was filed, the summary judgment standard is not the one to be

utilized.").  The Court of Appeals for the Third Circuit has further explained:

> We believe that Congress, familiar as it clearly was with summary
> judgment practice, would not have worded § 2679(d)(3) as it did if
> it intended that substitution would be unavailable in all cases
> where a summary judgment on the grounds of immunity would be
> inappropriate, i.e., where there is a dispute of fact material to the
> scope of employment issue.  That section, it will be recalled, gives
> the employee the right to insist "at any time before trial" that the
> court find and certify that [he or she] was acting within the scope
> of his office or employment.  This directive that the court "find"
> prior to trial whether the defendant is immune is not limited to
> cases in which the material facts are undisputed.  We ... read this
> as a directive that, where necessary, the court conduct an
> evidentiary hearing and make all findings necessary to a
> determination of the scope of employment issue.

*Melo II*, 13 F.3d at 746-47 (quotation marks and internal citation omitted).

Practical procedural considerations also weigh in favor of the binding effect of the Court's findings on Wusterbarth's request for certification.  "[A] pre-trial resolution of the scope of employment question is necessary to determine what kind of trial the court should conduct; a jury trial if the employee is the defendant or a bench trial if the United States is the defendant under the FTCA." *Mar. VI Inv., L.P. v. McKay*, 1996 WL 903289, at *5 (M.D. Ala. July 26, 1996).

In this case, the Court followed precisely the approach outlined in *Schrob*.  The Court allowed discovery focusing on the issue of Wusterbarth's scope of employment and set a time for dispositive motions on the issue.  The Court also conducted an evidentiary hearing on Wusterbarth's request for certification of scope of employment and, as detailed above, found that none of Wusterbarth's conduct at issue occurred within the scope of his employment.  Based on prevailing authority, the Court concludes that this finding is binding on Bohnenkamp as well as Wusterbarth.  The Court further holds that this finding negates subject matter jurisdiction based on the FTCA and requires the dismissal of Bohnenkamp's FTCA claim.  *See CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008), *as amended* (Sept. 29, 2008) (when addressing FTCA claims the Third Circuit's "approach has been to make disputes over the scope-of-employment requirement of 28 U.S.C. § 1346(b)(1) jurisdictional."); *Chapman v. United States*, 2020 WL 4819539 (M.D. Pa. Aug. 19, 2020);; *see also L.B. v. United States*, 8 F.4th 868, 870 (9th Cir. 2021) ("Because the FTCA requires that the challenged conduct be within the scope of the actor's employment, … the  FTCA claim necessarily failed.").

Accordingly, the Court will dismiss Bohnenkamp's FTCA claim against the Government, with prejudice.[10]

VII.   Conclusion

For the foregoing reasons, Wusterbarth's motion for certification under the Westfall Act will be denied.  The FTCA claim against the Government is dismissed for a lack of jurisdiction. Remaining in this case are the state law claims Bohnenkamp has alleged against Wusterbarth. An order concerning the further prosecution of those claims will issue in due course.[11]

An order will issue separately.

ENTERED this 25th day of January, 2023.


BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[10] The Court notes that were it to address the scope of employment issue under the traditional standard of review applicable to motions for summary judgment, it would find that the Government is entitled to judgment as a matter of law.  Wusterbarth's conduct was within the scope of his employment only if the evidence supports findings that "(a) it is the kind [the employee] is employed to perform; (b) it occurs substantially within the authorized time and space limits [and] (c) it is actuated, at least in part, by a purpose to serve the master...." *Brumfield*, 232 F.3d at 380 (quoting Restatement (Second) Agency § 228 (1958)).  Based on all evidentiary materials of record, the Court would find that no genuine issue of material fact remains for trial concerning the first and second of these elements and that the record cannot sustain positive findings on either.  As all three elements are necessary to place conduct within an employee's scope of employment, Bohnenkamp's FTCA claim would fail as a matter of law.

[11] The Court will allow the parties the opportunity to brief whether any independent basis for subject matter jurisdiction remains concerning Bohnenkamp's surviving claims against Wusterbarth.